# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

F I L E D

October 16, 1998

Cecil W. Crowson
Appellate Court
Clerk

MARY P. SOLIMA,                )
                                 )
      Plaintiff/Appellee,      )   Williamson Chancery
                                 )   No. 21880-R2
VS.                            )
                                 )   Appeal No.
DAVID J. SOLIMA,        )   01A01-9701-CH-00012
                                 )
      Defendant/Appellant.   )

## APPEAL FROM THE CHANCERY COURT FOR WILLIAMSON COUNTY
## AT FRANKLIN, TENNESSEE

### THE HONORABLE CORNELIA A. CLARK, JUDGE

For Plaintiff/Appellee:

Edward P. Silva
Hartzog, Silva & Davies
Franklin, Tennessee

For Defendant/Appellant:

Mike W. Binkley
Nashville, Tennessee

## AFFIRMED AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# O P I N I O N

This appeal involves a bitter change of custody proceeding. Two years after the divorce, the father filed a petition in the Chancery Court for Williamson County seeking custody of three of the parties' five children on the ground that the mother was progressively alienating the children from him. The mother counterclaimed for increased child support. Following a bench trial, the trial court declined to change the custody of the children and increased the father's child support. The father asserts on this appeal that the trial court erred by refusing to find that the circumstances had changed sufficiently to warrant a change in the custody of the parties' three youngest children.

## I.

Mary P. Solima and David J. Solima moved to Tennessee in 1989 when Mr. Solima went to work as an engineer for Saturn Corporation. They had four children at the time, and their fifth child was born shortly after they arrived in Tennessee. Their marriage began to falter several years later, and Ms. Solima filed for divorce in February 1992. She withdrew her divorce complaint in December 1992 because the parties were seeking marital counseling but filed a second divorce complaint in January 1993.

The divorce proceedings were particularly bitter. The parties' open hostility toward each other affected their children's behavior and performance in school and forced the children into counseling. On May 11, 1994, the Chancery Court for Williamson County awarded Ms. Solima the divorce and sole custody of the five children who were then between four and thirteen years of age. The trial court also granted Mr. Solima specific visitation rights, including visitation every other weekend, holiday visitation, and extended visitation during the summer. Mr. Solima was ordered pay $1,615 per month and one-half of any bonus he received as child support and to provide appropriate insurance coverage for the children.

The parties' hostility did not abate following the divorce. Since they could not communicate with each other directly, they communicated through their lawyers. Ms. Solima continued to denigrate Mr. Solima in front of the children and declined to keep Mr. Solima informed about the children's activities. Mr. Solima's exercise of his visitation rights provided a recurring flashpoint between the parties, and their

conduct intensified after Mr. Solima's female companion moved in with him in August 1994.

By Thanksgiving 1994, the parties' two oldest children, who were then thirteen and twelve years old, were resisting visitation with Mr. Solima. Mr. Solima's relationship with his two oldest children finally disintegrated during their Christmas 1994 visitation. Mr. Solima had planned to take all five of his children to St. Louis to visit their paternal grandparents during this extended visitation. However, following a violent confrontation with his oldest son and daughter, he returned these two children to Ms. Solima early and took the remaining three children to St. Louis.

Mr. Solima and his family severed all communications with his two oldest children following the Christmas 1994 holidays. In January 1995, his lawyer notified Ms. Solima's lawyer that Mr. Solima intended to continue visitations with only his three youngest children. After 1994, Mr. Solima and his family continued to lavish attention and presents on his three youngest children but pointedly declined to remember his two oldest children on their birthdays or at Christmas. Likewise, the two oldest children declined to initiate any sort of communication with their father on his birthday, Father's Day, or during any other holiday.

On April 24, 1996, Mr. Solima filed a petition in the Chancery Court for Williamson County, seeking custody of the parties' three youngest children and child support. He alleged that Ms. Solima had alienated the two oldest children from him and that she was progressively alienating the three younger children from him too. He also alleged that Ms. Solima's actions were harming the children emotionally and psychologically and that it was in their best interest that custody be changed. Ms. Solima answered the petition and counterclaimed for an increase in child support on grounds that Mr. Solima was not exercising visitation with the two oldest children as set in the divorce decree and contemplated under the child support guidelines.

The trial court conducted a bench trial on June 26, July 29, and August 17, 1996. After considering the evidence from both sides, the trial court held that there had been no material change of circumstances warranting a change in the custody arrangement for the three youngest children. The trial court also held that Mr. Solima was no longer exercising visitation with the two oldest children and, for that reason, that his child support obligation should be increased from $1,615 to $1,850 per

month, in addition to one-half of the net amount of all bonuses he received. Mr. Solima perfected this appeal

## II.

Mr. Solima's sole issue on appeal relates to the trial court's refusal to award him sole custody of the parties' three youngest children. He asserts that the weight of the evidence demonstrated that substantial and material changes of circumstances had occurred since the original custody decree and that these changes warranted changing the custody of his three youngest children. In considering these arguments, we must review the record de novo and must give great weight to the factual determinations made by the trial court who both heard and observed the witnesses. *See Gotwald v. Gotwald*, 768 S.W.2d 689, 695-97 (Tenn. Ct. App. 1988); *Scarbrough v. Scarbrough*, 752 S.W.2d 94, 96 (Tenn. Ct. App. 1988).

Custody and visitation decisions, once made and implemented, are res judicata upon the facts in existence or reasonably foreseeable when the decision was made. *See Young v. Smith*, 193 Tenn. 480, 485, 246 S.W.2d 93, 95 (1952); *Brumit v. Brumit*, 948 S.W.2d 739, 740 (Tenn. Ct. App. 1997); *In re Parsons*, 914 S.W.2d 889, 893 (Tenn. Ct. App. 1995). They may, however, be altered if intervening, material changes in the child's circumstances require modifying an existing custody or visitation arrangement. Accordingly, Tenn. Code Ann. § 36-6-101(a)(1) (Supp. 1998) empowers the courts to change custody "as the exigencies of the case may require."

There are no hard and fast rules for determining when a child's circumstances have changed sufficiently to warrant a change of his or her custody or visitation arrangement. *See Dantzler v. Dantzler*, 665 S.W.2d 385, 387 (Tenn. Ct. App. 1983). The party seeking to modify an existing custody or visitation arrangement has the burden of proof. *See Blair v. Badenhope*, 940 S.W.2d 575, 576 (Tenn. Ct. App. 1996). The courts will change a custody or visitation arrangement if the party seeking the change proves (1) that the child's circumstances have changed materially in a way that could not reasonably have been foreseen at the time of the original custody decision, *see Smith v. Haase*, 521 S.W.2d 49, 50 (Tenn. 1975); *McDaniel v. McDaniel*, 743 S.W.2d 167, 169 (Tenn. Ct. App. 1987), and (2) that the child's interests will be better served by changing the existing custody or visitation

arrangement. *See Hall v. Hall*, No. 01A01-9310-PB-00465, 1995 WL 316255, at *2 (Tenn. Ct. App. May 25, 1995) (No Tenn. R. App. P. 11 application filed).

Custody and visitation arrangements should promote the development of a healthy relationship between children and both their parents. *See Aaby v. Strange*, 924 S.W.2d 623, 629 (Tenn.1996); *Taylor v. Taylor*, 849 S.W.2d 319, 331-32 (Tenn.1993); *Varley v. Varley*, 934 S.W.2d 659, 668 (Tenn. Ct. App. 1996). Mr. Solima's argument is that the present custody relationship, if permitted to continue, will enable Ms. Solima to destroy his relationship with his three youngest children, just as she has already successfully destroyed his relationship with his two oldest children. Like the trial court, we have concluded that this argument embodies an oversimplified view of the complex emotional dynamics in this family for which both parents must accept their share of responsibility.

Mr. Solima's relationships with his five children has been far from ideal ever since 1994. Part of this is, no doubt, due to Ms. Solima's efforts to undermine these relationships, but part is also due to Mr. Solima's intransigence and almost juvenile petulance about his two oldest children. Rather than seeking to re-establish his relationship with these two children, he and his family seek to discard them and to settle for a relationship with the remaining three children.

The trial court found that during and immediately after the 1994 divorce, Ms. Solima was obstructing Mr. Solima's visitation and otherwise undermining Mr. Solima's relationship with his children. However, the trial court also concluded that Ms. Solima had tempered her behavior and that the parties' circumstances at the time of the 1996 hearings were "much better for the last 12 months than they have been for the time prior to that." While Ms. Solima may have abused her position as custodial parent in the past, the weight of the evidence shows that she is now abiding by the terms of the divorce decree. Accordingly, we concur with the trial court's conclusion that nothing about Ms. Solima's present behavior rises to the level of a material change in circumstances warranting a change is custody of the parties' three youngest children.

At the conclusion of the last hearing, the trial court admonished the parties to communicate directly to each other without using their lawyers as intermediaries. The trial court also admonished Mr. Solima to attempt to re-establish his relationship

with his two oldest children and warned Ms. Solima that she must encourage the children to love and to cooperate with Mr. Solima. While we concur with the trial court's observation that courts cannot control the hearts and minds of divorced parties, we agree that both parties must continue to work to repair the damage to their children caused by their discord and mutual animosity.

## III.

We affirm the denial of Mr. Solima's petition to change custody and remand the case to the trial court for whatever further proceedings may be required. We also deny Ms. Solima's request for the payment of her legal expenses incurred on this appeal. We tax the costs of this appeal to David J. Solima and his surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE


CONCUR:


_____
HENRY F. TODD,
PRESIDING JUDGE, M.S.


_____
WILLIAM B. CAIN, JUDGE