IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 13, 2012 Session

## IN RE NATHAN A-W

**Appeal from the Juvenile Court for Davidson County**
**No. 20041061      Betty K. Adams Green, Judge**

---

**No. M2011-01331-COA-R3-JV - Filed June 26, 2012**

---

This appeal arises out of a change of custody petition filed by the father of a minor child. The Juvenile Court magistrate found a material change of circumstances but retained the mother as primary residential parent. Father filed a request for rehearing before the Juvenile Court judge. Before the rehearing could be held, the guardian *ad litem* filed a motion requesting that the magistrate review the parenting plan and stay its prior order based on the mother's drug use, domestic abuse, and marital problems. Thereafter, the magistrate entered an order staying its prior order and naming father the primary residential parent. The Juvenile Court judge held a trial *de novo* and entered an order finding that a material change in circumstance had occurred and that it was in the child's best interest for the father to be designated the primary residential parent. The mother was ordered to pay the father's attorney fees and a portion of the guardian *ad litem's* fees. The mother appeals. We affirm the court's decision to designate the father as the primary residential parent, its award of attorney fees to the father, and the award of fees to the guardian *ad litem*. We remand for determination of the amount of attorney fees to be awarded.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed;**
**Case Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Trudy L. Bloodworth and Nicholas William Utter, Nashville, Tennessee, for the Appellant, Stephanie Cooksey.

Jessie Ray Akers, Jr. and David Matthew Dolan, Nashville, Tennessee, for the Appellee, Jeremy Woodruff.

# OPINION

Stephanie Cooksey ("Mother") and Jeremy Woodruff ("Father") are the unmarried parents of one minor child, Nathan, born June 13, 2003. Although the entire file relating to the paternity proceedings is not a part of the record of this appeal, the record reflects that Mother was designated the primary residential parent on July 8, 2005, and Father was granted visitation and ordered to pay child support; the parenting plan was later modified in several particulars.

On May 20, 2009, Father filed a petition seeking to change custody on the basis of a material change in Mother's circumstances; the trial court issued a Temporary Custody Order that day[1] granting custody to the Father and supervised visitation to Mother. On May 28, the parties entered an Agreed Order keeping the temporary order in effect until a hearing on July 30, specifying the particulars of Mother's supervised visitation and ordering that both parents submit to drug testing. On June 26, Father amended his petition to allege a material change of circumstances based on, *inter alia*, mother's three suicide attempts, her abuse of alcohol and prescription medication, her leaving the child unattended for days at a time with her husband, and the fact that Mother's husband had filed for divorce and would no longer be able to provide care of the child. Father sought to be named the primary residential parent and for mother's visitation to be supervised by a neutral party. Mother answered the petition and generally denied any wrongdoing; she also asserted that her husband had non-suited the divorce.

A guardian *ad litem* ("GAL") was appointed for the child, and a trial was held before a magistrate.[2] On December 8, 2009, the magistrate entered an order in which it found that Mother's "cutting incidents,[3] the two psychiatric hospitalizations, [and] the marital issues" constituted a material change in circumstances, but that it was in Nathan's best interest for Mother to be designated primary residential parent; the magistrate designated Mother primary

---

[1] The May 20 order is not in the record; it is apparent that a hearing was set for May 28.

[2] Tenn. Code Ann. § 37-1-107 permits the judge of the juvenile court to appoint a magistrate to hear a case or class of case. The magistrate in this case was appointed by the juvenile judge by order of July 10, 2009. *See also* Rule 4(a) of the Tennessee Rules of Juvenile Procedure.

[3] Although Father's petition characterized Mother's self-injurious behavior as suicide attempts, Mother and an expert witness testified that Mother had not attempted suicide; they testified that the incidents in which she purposely cut herself were stress-related "cutting" incidents.

residential parent and granted Father visitation. Father filed a Request for Rehearing to the Juvenile Court Judge pursuant to Tenn. R. Juv. P. 4(c).

On April 8, 2010, the GAL filed an "Emergency Motion to Review," alleging that Mother's behavior had "digressed" and that Mother and her husband had separated. The GAL's motion requested that the magistrate review Mother's contact with the child, require Mother to submit to random urinalysis screens, and to stay the December 8 order. A hearing was held on April 22, and the magistrate entered an order granting Father weekend visitation[4] and requiring both parties to submit to random drug screens. The magistrate specified that the order was temporary and set the matter for hearing on April 28.

On April 28, Father filed a response in support of the GAL's motion, asserting that Mother had tested positive for marijuana, that her husband had been arrested for domestic assault, and that it was in Nathan's best interest to be placed in Father's custody. The GAL also filed an Amended Emergency Motion to Review, which included Father's allegations regarding domestic violence and drug use.

A hearing on the GAL's motion was held, and on June 14, 2010 the magistrate entered an order, *inter alia*, staying the December 8 order until a August 26 trial *de novo* before the Juvenile Court; granting Father custody pending further hearing; and granting Mother supervised parenting time once per week.

On June 17, the magistrate held a hearing on a motion filed by Father to suspend Mother's visitation and set *pendente lite* support; an order reflecting the ruling was entered on June 24. According to the order and Mother's brief on appeal, Mother objected at the hearing to the magistrate's exercise of jurisdiction to consider the motion due to the pending trial *de novo*. The magistrate held that Tenn. Code Ann. § 37-1-139 provided it with jurisdiction to stay the December 8 order, modify the parenting schedule, and to set temporary support, which it ordered Mother to pay. The magistrate continued the motion to suspend visitation to July 22. In the interim, Mother filed a Motion for Additional Parenting Time. The magistrate held a hearing on July 22 and, by order of August 13, denied Mother's motion for additional parenting time.[5]

_____

[4] Father had been given parenting time every other weekend in the December 8, 2009 order; the magistrate's order directed that "the parenting plan be temporarily modified so that the minor child shall spend the weekend with the Father."

[5] The magistrate did not explicitly rule on Father's motion to suspend visitation, but because the magistrate did not reduce Mother's parenting time, it appears that Father's motion was not granted.

A trial *de novo* was held before the Juvenile Court judge on five days during October and December 2010. On May 10, 2011, the judge entered an order holding that there was a material change in circumstance and holding that it was in the best interest of the child to be placed in the joint custody of Mother and Father, with Father being the primary residential parent and given sole decision making authority regarding the child. With respect to Mother's objection to the magistrate's jurisdiction to issue the June 2009 orders, the judge held that the magistrate's actions were permitted by Tenn. Code Ann. § 37-1-139. The judge ordered Mother to pay child support, costs, and Father's attorney fees. The GAL was awarded fees and costs totaling $13,290, which the judge found to be "necessary and reasonable"; $2,865 of the GAL's fees were to be paid by Father and $10,425 by Mother.

Mother appeals and asserts the following issues:

1. The trial court erred in finding a material change in circumstances sufficient to justify the modification of the custody order and erred in finding the Father was comparatively more fit than Mother and erred in finding the child's best interests were served by changing custody to the father.

2. The trial court erred in changing custody of a child from Mother to Father, upon motion of the guardian *ad litem*, based upon new and additional facts, while the previous custody order was pending *de novo* review by the juvenile court.

3. The trial court erred in awarding father his attorney's fees and costs accruing from January 1, 2010 and erred in awarding such fees without a finding that the fees and costs were reasonable.

4. The trial court erred in ordering Mother to pay the guardian *ad litem's* attorney's fees and costs and erred in finding that the fees and costs were reasonable.

DISCUSSION

*I. Jurisdiction*

At the outset, we address Mother's contention that the magistrate erred in changing custody of Nathan from Mother to Father, upon motion of the GAL, while the December 8, 2009 order was pending a trial *de novo* by the Juvenile Court judge.

-4-

Under Rule 4(c) of the Tennessee Rules of Juvenile Procedure and Tenn. Code Ann. § 37-1-107(e), a party may seek review of a magistrate's decision in a juvenile case by way of a *de novo* hearing before the Juvenile Court judge. *Kelly v. Evans*, 43 S.W.3d 514, 515 (Tenn. Ct. App. 2000). The *de novo* hearing established by Rule 4(c) and Tenn. Code Ann. § 37-1-107(e) is not a review of the record presented to the magistrate, but is a full evidentiary hearing akin to a new trial, as in an appeal from a general sessions court to a circuit court. *Kelly*, 43 S.W.3d at 515; *see also Kissick v. Kallaher*, W2004-02983-COA-R3CV, 2006 WL 1350999, at *3 (Tenn. Ct. App. May 18, 2006) (judgment of the juvenile court was vacated and remanded for a *de novo* trial because the juvenile court judge reviewed the referee's decision without a hearing or the presentation of any evidence).

The review of the magistrate's decision in accordance with Rule 4(c) and Tenn. Code Ann. § 37-1-107(e) is a retrial of the matter without deference to the magistrate's findings of fact or to its holding. While Mother asserts that the magistrate did not have jurisdiction to modify the custody order, any defect in the magistrate's handling of the case is moot because the modification of custody issues were litigated *de novo* before the Juvenile Court judge.

*II. Change of Circumstances*

Mother contends that the Juvenile Court erred in finding a material change in circumstances sufficient to justify the modification of the custody order. She asserts that the court erred in finding the father was comparatively more fit than mother and erred in finding the child's best interests were served by changing custody to the father.

We review child custody cases *de novo* on the record of the trial court; the court's findings of fact are accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. *Hass v. Knighton*, 676 S.W.2d 554 (Tenn. 1984); Tenn. R. App. P. 13(d). Its conclusions of law, however, are not entitled to a presumption of correctness. *Wiser v. Wiser*, 339 S.W.3d 1, 11 (Tenn. Ct. App. 2010).

The threshold issue in a change of custody case is whether a material change in circumstances has occurred since the initial custody determination. *Blair v. Badenhope*, 77 S.W.3d 137, 150 (Tenn. 2002) (citing *Placencia v. Placencia,* 48 S.W.3d 732, 736 (Tenn. Ct. App. 2000)). "There are no hard and fast rules for determining when a child's circumstances have changed sufficiently to warrant a change of his or her custody." *Solima v. Solima,* 7 S.W.3d 30, 32 (Tenn. Ct. App. 1998). Nevertheless, courts consistently consider the following factors when determining whether a material change in circumstances has occurred: (1) the change has occurred after the entry of the order sought to be modified, and the change is not one that was known or reasonably anticipated when the order was entered,

and (2) the change of circumstances is one that affects the child's well-being in a meaningful way. *Blair*, 77 S.W.3d AT 150 (citing *see Smith v. Haase,* 521 S.W.2d 49, 50 (Tenn. 1975), *Hoalcraft v. Smithson,* 19 S.W.3d 822, 829 (Tenn. Ct. App. 1999)).

In the May 10, 2011 order, the court held that a material change of circumstances had occurred since the entry of both the parenting order of December 15, 2008 and the magistrate's December 8, 2009 order, based on the following facts:

a. The mother married and has twice been in divorce proceedings with her husband which have negatively impacted her and the child's stability;

b. The Mother, through denying marijuana usage, tested positive for marijuana in the Spring of 2010;

c. The Mother and her husband have been involved in multiple incidents of domestic violence, most of which in the presence or realm of her child or children, which has negatively impacted her and potentially the child's stability;

d. The stepfather has been arrested for multiple offenses of driving under the influence which negatively impacts the stability of the Mother's home;

e. The Mother lost employment with Vanderbilt Medical Center through alleged fault of her own, as testified to by Terri Hartman, which has negatively impacted her and the child's stability;

f. The Mother failed to exercise parenting time with the minor child from April, 2010 until June, 2010, which negatively impacts the Mother's relationship with the minor child;

g. The Mother failed to participate in the minor child's counseling and failed to assure the child attended all counseling appointments while in her primary care, which negatively impacts the child;

Upon our review of the record, we conclude that the evidence does not preponderate against the court's findings of fact and supports the holding that a material change in circumstances occurred.

With respect to the best interest of the child, the court set forth its findings as to the factors at Tenn. Code Ann. § 36-6-106,[6] and held that it was in the best interest of the child to be placed in the joint custody of Mother and Father with Father designated as the primary residential parent. We have likewise reviewed the evidence relative to the child's best interest and conclude that the court's determination of the best interest of the child is supported by the evidence.

### III. Attorney Fees

The court ordered Mother to pay "all fees accrued from January 1, 2010 until the entrance of this final Order, in accordance with the Affidavit for fees submitted by [Father's] counsel." Mother contends that the court erred in awarding attorney fees to Father.

---

[6] The factors to be considered in the court's best interest analysis are:

(1) The love, affection and emotional ties existing between the parents or caregivers and the child;
(2) The disposition of the parents or caregivers to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent or caregiver has been the primary caregiver;
(3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; . . . .
(4) The stability of the family unit of the parents or caregivers;
(5) The mental and physical health of the parents or caregivers;
(6) The home, school and community record of the child;
(7)(A) The reasonable preference of the child, if twelve (12) years of age or older;
(B) The court may hear the preference of a younger child on request. . . . .
(8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; . . . .
(9) The character and behavior of any other person who resides in or frequents the home of a parent or caregiver and the person's interactions with the child; and
(10) Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child.

Tenn. Code Ann. § 36-6-106.

Tenn. Code Ann. § 36-5-103(c)[7] grants trial courts in proceedings such as this the authority to award attorney fees. Determining whether an award of fees is appropriate is within the discretion of the trial court, and we will uphold a trial court's award of fees unless it has abused its discretion. *Kline v. Eyrich*, 69 S.W.3d 197, 203-04 (Tenn. 2002).[8] The amount must be reasonable, and the fees must relate to issues of custody or support. *Miller v. Miller*, 336 S.W.3d 578, 586 (Tenn. Ct. App. 2010). An award of fees is not primarily for the benefit of the custodial parent but rather to facilitate a child's access to the courts. *Sherrod v. Wix*, 849 S.W.2d 780, 784 (Tenn. Ct. App. 1992) (citing *Graham v. Graham*, 204 S.W. 987, 989 (1918)). Accordingly, the attorney's work in securing the award must ultimately inure to the benefit of the minor children. *Miller*, 336 S.W.3d at 586; *see also Dalton v. Dalton*, 858 S.W.2d 324, 327 (Tenn. Ct. App. 1993).

Father initiated this proceeding because of Mother's drug usage, self-inflicted physical harm, domestic violence, and marital instability, which the Juvenile Court judge found to have negatively impacted Nathan. The purpose of the proceeding was to promote the child's best interests and the resulting modification of custody advanced those interests by placing the child in an environment that best served his physical and emotional needs, matters which are of paramount concern in child custody cases. *See Shofner v. Shofner*, 181 S.W.3d 703, 716 (Tenn. Ct. App. 2004); *Caldwell v. Hill*, 250 S.W.3d 865, 869 (Tenn. Ct. App. 2007). The legal fees incurred by Father inured to the benefit of the child and we affirm the decision to award Father his attorney fees.

The trial court did not set a specific amount of attorney fees to be awarded to Father and the affidavit referenced in the order is not in the record on appeal; Mother asserts in her brief that Father never filed an affidavit regarding attorney fees. In light of these matters, we are unable to affirm the amount of fees and, accordingly, remand the case for the court to make a specific award of fees.

---

[7] Tenn. Code Ann. § 36-5-103(c) states:

The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

[8] An abuse of discretion occurs when a court applies incorrect legal standards, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party. *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008).

*IV. Guardian ad Litem's Fees and Costs*

The court awarded the GAL fees and costs totaling $13,290.00, finding them to be necessary and reasonable; Father was ordered to pay $2,865 of the fees and Mother $10,425. Mother asserts that the assessment of the GAL fees against her "in the absence of specific findings and in the absence of control and direction that would be provided by an order of appointment operates as a punitive measure upon Mother." She also asserts that the amount of the fee was not reasonable and that the GAL did not provide an itemized statement in support of the fees.

Tenn. R. Civ. P. 17.03 states that a "court may in its discretion allow the guardian *ad litem* a reasonable fee for services, to be taxed as costs." Tenn. S. Ct. R. 40A(11)(a) states that "[t]he guardian *ad litem* shall be compensated for fees and expenses in an amount the court determines is reasonable."[9] A trial court is given wide discretion in awarding guardian *ad litem* fees in a custody case, and this Court will not interfere in the exercise of that discretion absent a clear showing of abuse. *Keisling v. Keisling*, 196 S.W.3d 703, 726 (Tenn. Ct. App. 2005).

The GAL submitted two affidavits that contained a description of each action taken by the GAL, the date of the action, and the amount of time spent; an hourly rate of $125 was sought. The affidavits provide, in part, the information to be considered by the court in accordance with Tenn. S. Ct. R. 40A(11)(a). Together with the court's knowledge of the complexity and contentiousness of the litigation and the other factors in the rule, the affidavits support the holding that the fees were necessary and reasonable and the approval of the GAL's request.[10]

---

[9] Tenn. S. Ct. R. 40A(11)(a) specifies that the following factors may be considered when determining whether the guardian *ad litem*'s fees and expenses are reasonable:

(1) the time expended by the guardian;
(2) the contentiousness of the litigation;
(3) the complexity of the issues before the court;
(4) the expenses reasonably incurred by the guardian;
(5) the financial ability of each party to pay fees and costs;
(6) the fee customarily charged in the locality for similar services; and
(7) any other factors the court considers necessary.

[10] Although Mother asserts that the court erred by not making "specific findings," neither Tenn. R. Civ. P. 17.03 nor Tenn. S. Ct. R. 40A(11)(a) require a court to make findings of fact in compensating a guardian *ad litem*.

We also determine that the court did not abuse its discretion in its allocation of the GAL's fee, the majority of which was to be paid by Mother. As stated earlier, this proceeding was initiated because of Mother's actions and in order to address the best interest of the child. The appointment of the GAL was necessary to facilitate this proceeding and to act as an impartial representative for Nathan.

CONCLUSION

For the aforementioned reasons, the judgment of the Juvenile Court for Davidson County is affirmed; the case is remanded. For further proceedings in accordance with this opinion.

_____
RICHARD H. DINKINS, JUDGE