IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 20, 2001 Session

## JEFFREY MONROE WARD v. VALARIE JO WARD

**Direct Appeal from the Chancery Court for Crockett County**
**No. 7526     George R. Ellis, Chancellor**

---

**No. W2000-01081-COA-R3-CV - Filed April 12, 2001**

---

This appeal arises from a change of child custody action. Mother was awarded custody of Child pursuant to a marital dissolution agreement. Thereafter, Mother had sexual relations with a minor. This relationship led to an assault on minor by a third party in the presence of Child. This assault revealed the relationship of Mother and minor to the minor's parents. Pursuant to a deal with the minor's parents, Mother was forced to relocate to another state. When Father discovered the circumstances surrounding this relationship, he petitioned for a change of custody on the basis that Mother had exposed Child to criminal activity. In addition, Father cited Mother's refusal to grant him visitation and charged that she was improperly caring for Child. The trial court found a material change of circumstances requiring a comparison of the fitness of the parents. The court found Father more fit and granted a change of custody. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY K. LILLARD, J., joined.

David W. Camp, Jackson, Tennessee, for the appellant, Valarie Ward.

Shannon A. Jones, Humboldt, Tennessee, for the appellee, Jeffrey Monroe Ward.

### OPINION

Valarie and Jeffery Ward were divorced on September 14, 1998. Pursuant to their marital dissolution agreement, custody of their minor child, Dylan,[1] was granted to Ms. Ward. In 1999, Ms. Ward engaged in a sexual relationship with a minor, whom she had originally hired to

---

[1]The parties' minor child has been referred to variously throughout the record as James Dylan Ward, Dylan Ward or Dillon Ward. As the child's proper name is not clear from the record, we shall refer to him as Dylan Ward or Dylan in this opinion.

babysit Dylan. This relationship eventually came to the attention of the minor's parents' when a boyfriend of Ms. Ward discovered the minor in her home and assaulted him.[2] After this assault, Ms. Ward moved out of state pursuant to a deal with the minor's parents in order to avoid criminal charges for the sexual relationship. It was a short time after this move that Mr. Ward discovered the existence of this relationship and the subsequent assault of the minor. As a result, Mr. Ward filed a petition for a change of custody, citing not only Ms. Ward's criminal activity, but also several instances in which she denied him visitation with Dylan and left him in the care of others.

After a hearing, the court determined that there was a risk of substantial harm to the minor child, Dylan, through his exposure to his mother's criminal activity, as well as to the criminal activities of third parties.[3] The court then found that Ms. Ward's sexual relationship with a minor, her move to another state to avoid prosecution, and her denial of visitation to Jeffery Ward resulted in a material change of circumstances. As such, the court compared the fitness of both parents. While noting that neither was an ideal parent, the court determined that Mr. Ward was more fit and awarded him custody of Dylan.

The issue presented on appeal by Appellant, as we perceive it, is as follows:

> Did the trial court err in modifying the previous award of custody from Ms. Ward to Mr. Ward?

> Custody and visitation determinations often hinge on subtle factors, including the parents' demeanor and credibility during the . . . proceedings themselves. Accordingly, appellate courts are reluctant to second-guess a trial court's decisions. Trial courts must be able to exercise broad discretion in these matters, but they still must base their decisions on the proof and upon the appropriate application of the applicable principles of law. *D v. K*, 917 S.W.2d 682, 685 (Tenn. Ct. App.1995). Thus, we review these decisions de novo on the record with a presumption that the trial court's findings of fact are correct unless the evidence preponderates otherwise.

*Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn Ct. App. 1996) (citing *Nichols v. Nichols,* 792 S.W.2d 713, 716 (Tenn. 1990), *rev'd on other grounds*; *Aaby v. Strange*, 624 S.W.2d 623 (Tenn. 1996); *Doles v. Doles,* 848 S.W.2d 656, 661 (Tenn. Ct. App. 1992)).

---

[2]Dylan was in the house at the time of the assault. However, the child was not present in the house during any of the actual sexual encounters between Ms. Ward and the minor.

[3]The court was referring to the criminal assault of the minor, Mr. Mask, by Ms. Ward's boyfriend.

**Material Change in Circumstances**

Once an initial determination of the custody of a child has been made by a trial court, such custody may not be changed absent "a material change in circumstances such that the welfare of the child demands a redetermination." *Hoalcraft v. Smithson*, 19 S.W.3d 822, 828 (Tenn. Ct. App. 1999) (citing *Massengale v. Massengale*, 915 S.W.2d 818, 819 (Tenn. Ct. App. 1995)).

> Under this standard, the primary inquiry is whether there has been a material change in the child's circumstances. Although there is no concrete definition for what constitutes a material change of circumstances, this court has enumerated several factors that should be taken into consideration when determining whether such a change has occurred. In general, the change must occur after the entry of the order sought to be modified and the change cannot be one that was known or reasonably anticipated when the order was entered. *Turner v. Turner*, 776 S.W.2d 88, 90 (Tenn. Ct. App.1988); *Dalton v. Dalton*, 858 S.W.2d 324, 326 (Tenn. Ct. App.1993). In addition, the material change of circumstances must be a change in the child's circumstances, not the circumstances of either or both of the parents. *McCain v. Grim*, No. 01A01-9711-CH-00634, 1999 WL 820216, at \*2 (Tenn. Ct. App. Oct. 15, 1999). Finally, the change must affect the child's well-being in a material way. *Dailey v. Dailey*, 635 S.W.2d 391, 393 (Tenn. Ct. App. 1981).

*Hoalcraft*, 19 S.W.3d at 828-29.

In the case currently before us, the trial court cited several factors in determining that a material change in the child's circumstances had taken place. Among those factors cited were Ms. Ward's criminal activity of having a sexual relationship with a minor and her exposure of Dylan to the criminal activity of others. In addition, the court specifically found that Ms. Ward was not a credible witness and questioned her testimony on various matters, including her attempts to foster a relationship between Dylan and his father, and the amount and type of attention and care that Ms. Ward provided her son. These events could not have been reasonably anticipated at the moment child custody was first granted to Ms. Ward, and specifically affected Dylan's circumstances in a material way. As such, the trial court properly found that there was a material change in circumstances such that the custody of Dylan should be re-visited.

**Comparative Fitness**

> "In child custody matters the paramount concern of the Court is the welfare of the children and the rights of the parties will yield to that concern." *Dantzler v. Dantzler*, 665 S.W.2d 385, 387 (Tenn. Ct. App. 1983); *see also Contreras v. Ward*, 831 S.W.2d 288, 289 (Tenn. Ct. App. 1991). . . . . [T]he determining facts are infinite in their variety and "the supreme rule to which all others should yield is the welfare and best interest of the child." *Holloway v. Bradley*, 230 S.W.2d 1003, 1006 (Tenn. 1950). In any proceedings requiring the court to make a custody determination regarding a minor child, such determination shall be made upon the basis of the best interest of the minor child.

***Lurie v. Manning***, No. 01A01-9807-CV-00376, 1999 WL 732692, at *2 (Tenn. Ct. App. Sep. 21, 1999) (***no perm. app. filed***).

In order to determine a custody arrangement that will be in the best interest of a child, "the court will assess the comparative fitness of the parties seeking custody in light of the particular circumstances of the case, considering the relevant factors, which are the same in a modification proceeding as those criteria used in establishing the initial custody order." ***Id.*** (citing ***Ruyle v. Ruyle***, 928 S.W.2d 439, 442 (Tenn. Ct. App. 1996); ***Matter of Parsons***, 914 S.W.2d 889, 893 (Tenn. Ct. App. 1995)).

The criteria a court must consider are listed in section 36-6-106 of the Tennessee Code. That section states:

(a)  In a suit for annulment, divorce, separate maintenance, or in any other proceeding requiring the court to make a custody determination regarding a minor child, such determination shall be made upon the basis of the best interest of the child. The court shall consider all relevant factors including the following where applicable:
    (1) The love, affection and emotional ties existing between the parents and child;
    (2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;
    (3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; provided, that where there is a finding, under § 36-6-106(8), of child abuse, as defined in § 39-15-401 or § 39-15-402, or child sexual abuse, as defined in § 37-1- 602, by one (1) parent, and that a non-perpetrating parent has relocated in order to flee the perpetrating parent, that such relocation shall not weigh against an award of custody;
    (4) The stability of the family unit of the parents;
    (5) The mental and physical health of the parents;
    (6) The home, school and community record of the child;
    (7) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preferences of older children should normally be given greater weight than those of younger children;
    (8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; provided, that where there are allegations that one (1) parent has committed child abuse, [as defined in § 39-15-401 or § 39-15- 402], or child sexual abuse, [as defined in § 37-1-602], against a family member, the court shall consider all evidence relevant to the physical and emotional safety of the child, and determine, by a clear preponderance of the evidence, whether such abuse has occurred. The court shall include in its decision a written finding of all evidence, and all findings of facts connected thereto. In addition, the court shall, where appropriate, refer any issues of abuse to the juvenile court for further proceedings;

(9) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child; and
(10) Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.

Tenn. Code Ann. § 36-6-106 (Supp. 2000).

Thus, a court must determine, in light of the factors in section 36-6-106 of the Tennessee Code, which parent is more or less fit to care for a minor child. In the case currently before us, the trial court found that while neither parent was a candidate for "the Good Housekeeping Parent of the Year award," Ms. Ward exposed Dylan to a "risk of substantial harm" and to the criminal activity of both herself and others. As a result, the court found that under the test of comparative fitness, Mr. Ward was more fit to have permanent custody of Dylan. Upon our review of the record, it is clear that there is not a preponderance of the evidence against this finding. We hereby affirm the trial court's change of custody.

## Conclusion

Based on the foregoing conclusions, we hereby affirm the trial court judgment. Costs on appeal are assessed against the Appellant, Valarie Jo Ward, and her surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE

-5-